UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO: 20-41** |
| v. | * | **SECTION: "A"** |
| **RAYMOND ZEPEDA** | * | |
| * * * | | |

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED  JUN 29 2021

CAROL L. MICHEL
CLERK

## FACTUAL BASIS

The defendant, **RAYMOND ZEPEDA**, has agreed to plead guilty to Count One of the one-count Indictment. Count One charges **ZEPEDA** and others with conspiring to distribute and possess with the intent to distribute a kilogram or more of a mixture and substance containing a detectable amount of heroin and five kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, in violation of Title 21, United States Code, Sections 841(a), 841(b)(1)(A), and 846.

Should this matter have proceeded to trial, the government would have proven, through the introduction of competent testimony and other admissible evidence, the following facts, beyond a reasonable doubt, to support the allegations in the Indictment:

In the late summer/fall of 2019, the Drug Enforcement Administration conducted a lengthy wiretap investigation into a group of individuals distributing heroin and cocaine in New Orleans. The investigation began by targeting Marvin SIMS, who is charged in another case in this District. SIMS was a prolific dealer who sold heroin, cocaine, crack, and fentanyl to other dealers and users, primarily around the former Iberville Projects. The government developed probable cause to intercept SIMS' phone and conducted interceptions of SIMS for approximately 60 days.

During the course of intercepts of SIMS' phone, it became clear that SIMS sourced from several individuals. The DEA identified certain of SIMS' sources to be more prolific and focused



the investigation on those individuals. The DEA determined that SIMS was buying cocaine from Jabar GIBSON (among others), who is a co-defendant in this case. The DEA used probable cause developed during the course of the SIMS intercept to begin intercepting GIBSON's phone.

During approximately 30 days of intercepts of GIBSON's phone, the DEA learned that GIBSON was buying cocaine and heroin from Leon HENRY, who is a co-defendant in this case. Through the intercepts, the DEA learned that HENRY, who was based in Atlanta, ordered heroin and cocaine from as-of-then unidentified sources of supply in Houston. HENRY dispatched his underlings, Darnell SANTINAC and Tony WATSON, from Baton Rouge, where HENRY had a stash house in which SANTINAC lived, on the MegaBus to Houston to consummate transactions. SANTINAC and WATSON would bring large amounts of cash from Baton Rouge to Houston and return with kilogram quantities of cocaine and heroin. MegaBus records showed hundreds of purchased tickets for SANTINAC and WATSON from 2017 to 2019. GIBSON would call HENRY to place an order, and HENRY would then have SANTINAC provide the drugs to GIBSON, generally either in New Orleans or Baton Rouge.

Using the probable cause developed during the course of the intercepts of GIBSON's phone, the DEA was able to begin intercepts of Leon HENRY's phone in late November 2019. During the course of the HENRY intercept, the DEA intercepted communications about HENRY sending SANTINAC and WATSON to Houston to acquire kilogram quantities of heroin and cocaine. For example, based on numerous telephone calls and text messages captured over the wire and electronic intercept monitoring 678-794-3376 (HENRY) in early December 2019, the DEA learned of plan for SANTINAC and WATSON to go to Houston, Texas to purchase, on HENRY's behalf, approximately four (4) kilograms of cocaine from Raymond ZEPEDA and one (1) kilogram of heroin from CLARK.

Based on these intercepted calls, the DEA believed that SANTINAC and another drug courier, WATSON, would utilize the MegaBus to transport the drugs from Houston, Texas to Baton Rouge, Louisiana on December 5 or December 6, 2019. In an intercepted call from HENRY that WATSON answered and then passed the phone to SANTINAC, HENRY and SANTINAC agreed that WATSON would travel from Houston to Baton Rouge with a kilogram of heroin they had just acquired from CLARK, drop off the heroin at the stash house and get cash from HENRY to buy several kilograms of cocaine, and immediately return to Houston to buy the cocaine. WATSON in fact made the trip as planned on December 5, leaving a kilogram of heroin at the stash house in Baton Rouge and returning to Houston with approximately $100,000 in cash.

During the early morning hours on December 6, 2019, agents utilized GPS precise location information to track (225) 831-0250 (SANTINAC) from Houston, Texas to Louisiana. On December 6, 2019, at approximately 5:00 a.m., agents conducted an investigatory stop of the MegaBus and seized two kilograms of cocaine from SANTINAC and two kilograms of cocaine from WATSON. SANTINAC consented to the search of his residence in Baton Rouge, Louisiana, which was owned by HENRY and which was being used as a stash house. Earlier that morning, agents had seen HENRY at the residence and stopped him when he left. They found an assault rifle and a handgun in the vehicle. During the search of the residence, agents were able to seize a kilogram of heroin that was supplied by CLARK the previous day and brought to Baton Rouge by WATSON, as discussed in the preceding paragraph of this factual basis. A photo is below:



Through subsequent interviews, the DEA learned the heroin was purchased from a Hispanic male, FNU LNU a.k.a. "Bees," [i.e., CLARK] and the cocaine was supplied by another Hispanic male, "Raymond" LNU [i.e., **ZEPEDA**].

**ZEPEDA** admits that he brought the four kilograms of cocaine that were seized from WATSON and SANTINAC during the MegaBus stop on the morning of December 6, 2019 to them at a hotel in Houston shortly before they left for Baton Rouge. **ZEPEDA** also admits that he brought kilograms of cocaine to SANTINAC at that same hotel in Houston on prior occasions. The government and **ZEPEDA** stipulate that **ZEPEDA** should be held accountable for at least five but less than fifteen kilograms of cocaine.

This proffer of evidence is not intended to constitute a complete statement of all facts known by the government, but rather is a minimum statement of facts intended to prove the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty.

_____  	\_\_6/29/2021_____
DAVID HALLER  	Date
Assistant United States Attorney

_____  	\_\_06-29-21_____
RAYMOND ZEPEDA  	Date
Defendant

_____  	\_\_06/29/21_____
MICHAEL G. RASPANTI  	Date
Attorney for Zepeda

5